UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FANTASIA C. HUDSON,

        Plaintiff,

    v.                                      Case No. 20-C-1877

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

---

Plaintiff Fantasia Hudson filed this action for judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Hudson asserts that the decision of the administrative law judge (ALJ) is flawed and requires reversal for several reasons. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

### BACKGROUND

Hudson filed applications for a period of disability and disability insurance benefits and for supplemental security income on May 16, 2018, alleging disability beginning May 13, 2018. She listed broken femur, pelvis, tibia, knee, and ankle as the conditions that limited her ability to work. R. 229. After her applications were denied initially and on reconsideration, Hudson filed a request for an administrative hearing. ALJ Margaret Carey held a hearing on October 18, 2019. Hudson, who was represented by counsel, and a vocational expert (VE) testified. R. 31–93.

At the time of the hearing, Hudson was 27 years old and lived in a house in Broadview, Illinois with her father, her stepmother, her two children, ages two and nine, and her stepmother's sister. R. 35–36. She testified that she completed the tenth grade and took classes to be a medical transportation driver. R. 40–41. She indicated that she previously worked as a cashier or sales associate at Foot Locker, Kmart, Home Depot, Jewel Food Store, and Walmart. R. 43, 45. She also worked part-time at a newsstand at Airport Management Services for six or seven months. R. 44. In 2016, Hudson worked at Akins Medical Transportation as a medical transportation driver for individuals in wheelchairs and left that job when she gave birth to her daughter. R. 45–46. In 2018, she was self-employed as an Uber driver but stopped driving after she was hit by a car while trying to walk across the street. R. 47, 290. After the accident, she worked for her father's medical transportation company for about one month. R. 48–49. Hudson testified that she stopped driving for her father's company due to her pain. R. 51.

Hudson reported that she can sit for an hour and stand for 20 to 25 minutes. R. 64. She testified that she has pain while sitting; stiffness in her legs; swelling in her hips, left leg, left knee, and left ankle; and numbness in her feet. R. 52–54, 58. She indicated that she walks with a walker, stumbles, and cannot go up stairs. R. 54. Hudson stated that she needs to move around every ten minutes and takes over-the-counter medication to relieve the pain and elevates her legs to reduce the swelling. R. 53–54, 57, 59–60. Hudson testified that she needs assistance putting clothes and her shoes on and getting in and out of the bathtub. R. 56. As to her mental conditions, Hudson stated that she went to the hospital for depression and that her doctor put her on mood stabilizers. R. 61. She stated that she spends her day watching television and sleeping. R. 64.

In a fourteen-page decision dated January 30, 2020, the ALJ concluded Hudson was not disabled. R. 13–26. Following the Agency's sequential evaluation process, the ALJ found that

Hudson met the insured status requirements of the Social Security Act through December 31, 2023, and that she had not engaged in substantial gainful activity since May 13, 2018, the alleged onset date. R. 16. Next, the ALJ determined Hudson had the following severe impairments: status post broken right femur with repair; status post left tibia fibula with rodding; status post broken pelvis; obesity; and status post left ankle fracture. *Id.* The ALJ found that Hudson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

After reviewing the record, the ALJ determined Hudson had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), "except with a sit stand option, in that after sitting 1 hour the individual can stand for 5 minutes and then sit again; no ladders, ropes, scaffolds, kneeling or crawling; occasional stairs, ramps and crouching; no unprotected heights or hazardous machinery or driving; and occasional push, pull and use of foot controls on the bilateral lower extremities." R. 18. The ALJ found Hudson was unable to perform any past relevant work as a cashier II, cashier checker, and driver. R. 22. But considering Hudson's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Hudson can perform, including charge account clerk; order clerk, food and beverage; and ink printer. R. 23. Based on these findings, the ALJ determined Hudson has not been under a disability, as defined in the Social Security Act, from May 13, 2018, through the date of the decision. R. 25. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Hudson's request for review. Thereafter, Hudson commenced this action for judicial review.

# LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

4

Case 2:20-cv-01877-WCG    Filed 11/02/21    Page 4 of 8    Document 22

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of

5

credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Hudson raises a number of challenges to the ALJ's decision, but the Court finds that only one need be addressed because it is enough, by itself, to require a remand. Hudson asserts that the ALJ erred in assessing her RFC because she did not consider the fact that Hudson was required to elevate her legs. An RFC is an administrative assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96-8p. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p). An ALJ assesses a claimant's RFC "based on all the relevant evidence" in the case record, including severe and non-severe impairments as well as medical and non-medical evidence. § 404.1545(e). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick

facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

In this case, Hudson reported pain in her legs. R. 781–82. Providers noted edema in her left ankle and foot, R. 783, and an X-ray of her left ankle revealed diffuse soft tissue swelling, R. 1025. Hudson's physical therapist recommended that Hudson elevate her legs and do ankle pumps to decrease swelling. R. 936. Hudson reported at physical therapy that she elevated her leg and noted decreased swelling. R. 951. At the administrative hearing, Hudson testified that she had to lay down during the day and elevate her legs to reduce swelling in her lower extremities. R. 53–54.

The ALJ did not address Hudson's testimony that she lay down during the day and elevate her legs. Although an ALJ is not required to mention every piece of evidence in the record, she cannot ignore entire lines of evidence related to a claimant's condition or impairment. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The ALJ's decision does not discuss Hudson's testimony that she lay down and elevate her legs or what impact, if any, this had on Hudson's ability to work. She did not note the evidence she relied upon to determine that Hudson did not require a restriction that would allow her to elevate her legs or explain why Hudson's testimony was not credible. The ALJ's failure is not harmless because the VE testified that Hudson would not be able to lay down to elevate her legs or otherwise elevate her legs while working. R. 84. The ALJ's failure to discuss this evidence and to build an accurate and logical bridge from that evidence to the conclusion that Hudson can do sedentary work within the limitations described in the RFC warrants remand in this case. *See Clifford*, 227 F.3d at 872.

7

## CONCLUSION

For these reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the error in failing to sufficiently discuss the evidence relevant to Hudson elevating her legs, the Commissioner should also address Hudson's other claims of error, that the ALJ's physical RFC assessment is not supported by substantial evidence, the ALJ's evaluation of Hudson's mental impairments was insufficient, and the ALJ's evaluation of Hudson's subjective symptoms was insufficient, on remand. Further consideration of these claimed errors on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 2nd day of November, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
